UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDITH M. THOMPSON,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO. C04-5793KLS

ORDER AFFIRMING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, Edith M. Thompson, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-three years old.[1] Tr. 31. She received her general equivalency diploma and has past work experience as a quality control checker, food service worker, waitress, cook's helper, courier, psychiatric aide, bench lathe operator, and general production worker. Tr. 19, 134, 142.

Plaintiff filed an application for SSI benefits on January 5, 2000, alleging disability as of November

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

2, 1993, due to problems with her back, right shoulder, knees, teeth and wrists, high blood pressure, a major depressive episode, post traumatic stress disorder ("PTSD"), and an intermittent explosive disorder. Tr. 19, 133. Her application was denied initially and on reconsideration.[2] Tr. 31-32, 41, 46. Plaintiff requested a hearing, which was held on August 19, 2002, before an administrative law judge ("ALJ"). Tr. 401. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 401-61.

On January 9, 2003, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of a right shoulder disorder, a low back disorder, a major depressive episode, PTSD, and an intermittent explosive disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded her from performing her past relevant work; and

(5) at step five, plaintiff was capable of performing other work existing in significant numbers in the national economy.

Tr. 20, 28-29. Plaintiff's request for review was denied by the Appeals Council on October 26, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 6-9; 20 C.F.R. § 416.1481.

On November 24, 2004, plaintiff filed a complaint in this court seeking judicial review of the ALJ's decision. (Dkt. #1, #2 and #3). Plaintiff argues that decision should be reversed and remanded for an award of benefits because:

(a) the ALJ erred in finding plaintiff did not have a severe mental impairment;

(b) the ALJ erred in finding plaintiff did not meet or equal the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04;

(c) the ALJ erred in proceeding with the administrative hearing without obtaining medical expert testimony;

(d) the erred in assessing plaintiff's residual functional capacity; and

---

[2] Plaintiff also appears to have filed three previous applications, which apparently were denied as well. Tr. 18.

REPORT AND RECOMMENDATION
Page - 2

    (e)    the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

For the reasons set forth below, however, the undersigned finds the ALJ properly determined plaintiff to be not disabled.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    The ALJ Found Plaintiff Had a Severe Mental Impairment

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 416.920. At step two, the ALJ must determine if an impairment is "severe". Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 416.920(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

Plaintiff states in her opening brief that she disputes the ALJ's determination at step two that she had

no severe mental impairment. Plaintiff's Opening Brief, pp. 27-28. With respect to plaintiff's mental impairments, the ALJ found that she had a major depressive episode, PTSD, and an intermittent explosive disorder, which resulted in functional limitations that "more than minimally" interfered with her "ability to perform basic mental work-related activities," and thus constituted "severe" impairments. Tr. 20. Contrary to plaintiff's assertion, therefore, the ALJ did find she had severe mental impairments.

II.     <u>The ALJ's Step Three Analysis Was Proper</u>

At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R § 416.920(d); <u>Tackett</u>, 180 F.3d at 1098. If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. <u>Id.</u> The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. <u>Tacket</u>, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." <u>Id.</u> An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2. An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." <u>Id.</u> at *2. However, "symptoms alone" will not justify a finding of equivalence. <u>Id.</u>

In her reply brief, plaintiff implies that the ALJ erred in failing to find that her impairments met or equaled any of the Listings. Tr. 20; Plaintiff's Reply Brief, p. 3. Plaintiff, however, has raised this issue for the first time only in her reply brief, and, in any event, has not pointed to anything in the record to support that implication. Accordingly, this issue has not been properly brought before this court, and therefore the undersigned does not find that the ALJ erred here.

III.    <u>The ALJ Was Not Required to Obtain the Testimony of a Medical Expert</u>

Plaintiff argues the ALJ erred by proceeding with the administrative hearing without the testimony of a medical expert. This, plaintiff asserts, prejudiced her case, in that she anticipated the medical expert would have offered an objective review and opinion of the medical evidence in the record. Plaintiff's

REPORT AND RECOMMENDATION
Page - 4

1  Opening Brief, pp. 29-30.  Instead, plaintiff argues, the ALJ interjected her own lay opinion over those
2  provided by the treating and examining physicians in the record. Id.  The undersigned disagrees.  First,
3  plaintiff again points to nothing in the ALJ's decision or the record to show the ALJ improperly substituted
4  her own opinion for that of any of the medical sources in the record.
5  　　　　In addition, an ALJ's duty to further develop the record "is triggered only when there is ambiguous
6  evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v.
7  Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see also Social Security Ruling ("SSR") 96-2p, 1996 WL
8  374188 *4 ("[T]he ALJ . . . may need to consult a medical expert to gain more insight into what the clinical
9  signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or
10 whether it is not inconsistent with other substantial evidence in the case record.").  Here, a review of the
11 record does not clearly indicate that the medical evidence contained therein is sufficiently ambiguous or
12 inadequate so as to require the testimony of a medical expert.  Accordingly, the undersigned finds that the
13 ALJ did not err in proceeding without medical expert testimony.
14 IV.    The ALJ Properly Assessed Plaintiff's Residual Functional Capacity
15 　　　　If a disability determination "cannot be made on the basis of medical factors alone at step three of
16 the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and
17 assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A
18 claimant's residual functional capacity assessment is used at step four to determine whether he or she can do
19 his or her past relevant work, and at step five to determine whether he or she can do other work. Id.
20 Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.
21 　　　　A claimant's residual functional capacity is the maximum amount of work the claimant is able to
22 perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work
23 must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those
24 limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a
25 claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-
26 related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the
27 medical or other evidence." Id. at *7.
28 　　　　The ALJ assessed plaintiff with the following residual functional capacity:

REPORT AND RECOMMENDATION
Page - 5

> The greater weight of the evidence of record establishes that the claimant has the overall residual functional capacity to occasionally lift twenty pounds, frequently lift ten pounds, stand for two hours in an eight-hour day, walk for two hours in an eight-hour day, and sit for six-hours in an eight-hour day. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She can occasionally reach in all directions. She can frequently handle and constantly manipulate objects, and occasionally reach overhead with her right hand. She would not require close supervision. She could have occasional contact with her co-workers, and the general public.

Tr. 26. Plaintiff argues this assessment is erroneous, because the ALJ: (1) ignored pertinent evidence demonstrating that clear fatigue and physical limitations limited her ability to perform work-related tasks on a regular and continuous basis; and (2) failed to address the fact that she was not capable of handling the emotional and psychological interference with her ability to deal with daily activities, people and the public, cope with stress, and cognitively understand and manage work-like information. Plaintiff's Opening Brief, p. 25, 27. The undersigned disagrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

REPORT AND RECOMMENDATION
Page - 6

legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; see also <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.  Plaintiff's Physical Impairments

First, plaintiff once more cites to no evidence in the record to support her assertions.  Second, the weight of the medical evidence in the record supports the ALJ's residual functional capacity assessment. While the record shows plaintiff suffered from various musculoskeletal and other physical problems, for the most part, none of those problems were noted to prevent her from performing a modified range of light work. <u>See</u> Tr. 184-87, 189-97, 200, 202-04, 211-12, 214-16, 220, 231-34, 236-38, 242-47, 250-51, 256-67, 269, 274, 283-93, 296-03, 305-06, 317-22, 329-30, 332, 349-56, 373, 381-84, 387-91, 394-98. Further, no physician, treating or examining, has opined that her physical limitations restricted her ability to perform work-related tasks on a regular and continuing basis.

B.  Plaintiff's Mental Impairments

With respect to plaintiff's mental impairments, here too the medical evidence in the record fails to show that those impairments were disabling.  In early October 1998, Carla van Dam, Ph.D., and Trevelyan Houck, Ph.D., two non-examining consulting psychologists, found plaintiff had no medically determinable mental impairment. Tr. 252-53.  In early February 1999, plaintiff was evaluated by John Ernst, Ph.D.  That evaluation was largely unremarkable. Tr. 273.  Although Dr. Ernst felt that she did not "have much in the

REPORT AND RECOMMENDATION
Page - 7

1  way of potentially helpful cognitive-behavioral coping strategies," and thus probably would "need further
2  discussion and encouragement on appropriate and consistent use of her anti-depressant medication," he did
3  not place any limitations on her ability to work. Id.

4  Plaintiff was evaluated again in early June 2000, by Jeanne L. Birdsong. Again, plaintiff's mental
5  status examination was largely unremarkable. Tr. 236-37. She was diagnosed with a major depressive
6  episode, PTSD, an intermittent explosive disorder, and a global assessment of functioning ("GAF") score of
7  60. Tr. 238. With respect to plaintiff's prognosis, Dr. Birdsong found in relevant part as follows:

> The claimant is not in any psychiatric treatment and could benefit from optimal pharmacotherapy as well as psychotherapy for her depression and posttraumatic stress disorder. In addition, she may benefit from anger management classes for her intermittent explosive disorder.
>
> It is difficult to say whether or not the claimant's condition will improve within the next 12 months, as she has not gotten any treatment to date.

Tr. 338. Dr. Birdsong also provided the following opinion regarding plaintiff's functional assessment:

> The claimant seems capable of managing her own funds, as she is doing so now.
>
> The claimant has the ability to perform simple and repetitive tasks as well as more complex and detailed tasks, as she was able to do a three-step command without difficulty and she had good concentration.
>
> The claimant may have some difficulty accepting instructions from supervisors or interacting with co-workers and the public, as she has a history of a poor temper and she does not tend to trust other people. She may have some difficulty with authority as well, as demonstrated by her anger at the police department.
>
> It seems that the claimant would be able to perform work activities on a consistent basis without additional supervision.
>
> The claimant should be able to maintain regular attendance in the workplace, but she will likely have decreased stress tolerance due to her major depression and posttraumatic stress disorder. This may lead to difficulties with anger dyscontrol.

Tr. 338-39.

In mid-July 2000, William Lysak, Ph.D., another non-examining consulting psychologist, found plaintiff's major depressive episode and PTSD to be non-severe. Tr. 340, 343-44. Dr. Lysak further found that she had only slight restrictions in her activities of daily living and slight difficulties in maintaining social functioning, that she seldom had deficiencies of concentration, persistence or pace, and that there was insufficient evidence of episodes of deterioration or decompensation. Tr. 347.

Plaintiff points to three evaluations provided by Dr. Andrew S. Hwang as evidence that her mental

REPORT AND RECOMMENDATION
Page - 8

impairments were disabling. Plaintiff's Opening Brief, pp. 25-26. In late March 2000, Dr. Hwang completed a state psychological/psychiatric evaluation form, in which he diagnosed plaintiff with recurrent major depression, attention deficit disorder, and pain on multiple locations. Tr. 326. In addition, he found plaintiff to have marked to severe limitations in a number of mental functional areas, further stating that due to plaintiff's "severe" depressive symptoms, her cognitive functioning was "very impaired" and she could not handle "job-related personal conflicts." Tr. 327. Although Dr. Hwang felt that plaintiff would improve with proper treatment, he estimated that she would be impaired to the degree indicated for six months to indefinitely. Tr. 328. Evaluation forms containing substantially similar findings were completed by Dr. Hwang in early March 2001, and again in late February 2002. Tr. 357-60, 375-78.

The ALJ rejected Dr. Hwang's findings, because they were not supported by objective mental status examinations, were inconsistent with the other objective medical evidence in the record, and were largely based on plaintiff's self-reported complaints. Tr. 23. The ALJ further observed that much of plaintiff's depression appeared to be "situational," and that Dr. Hwang was "unable to segregate" her physical pain complaints from her depression. Id. Lastly, the ALJ noted that Dr. Hwang's reports were on "check box" forms, and, as such, were "accorded limited weight" for the above reasons. Id. The undersigned finds all of these reasons for rejecting Dr. Hwang's reports to be clear and convincing.

First, as discussed above, the weight of the medical evidence in the record reveals that plaintiff's mental impairments were far from disabling. In particular, Dr. Hwang's reports conflicted with that of Dr. Birdsong, whose opinion the ALJ was permitted to adopt over those of Dr. Hwang.[3] See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where opinion of examining physician is based on independent clinical findings, it is within ALJ's discretion to disregard conflicting opinion in another examining physician's diagnosis). In addition, the Ninth Circuit has expressed preference for individualized medical opinions over "check-off" reports, and the ALJ need not accept the opinion of an examining physician, if it is "brief,

---

[3] Plaintiff argues Dr. Birdsong's statement that she "will likely have decreased stress tolerance due to her major depression and posttraumatic stress disorder," which "may lead to difficulties with anger dyscontrol" (Tr. 338-39), qualifies Dr. Birdsong's prior statement that plaintiff "should be able to maintain regular attendance in the work place" (Tr. 338). Plaintiff's Opening Brief, p. 32. This qualification, plaintiff asserts, "leads directly to the conclusion" that she may obtain a job, but clearly would not be able to sustain it. Id. Plaintiff, however, overstates the effect of that qualification, as Dr. Birdsong provided a detailed assessment of her functional capabilities, noting that she also "would be able to perform work activities on a consistent basis." Tr. 338. In any event, to the extent that such evidence was ambiguous or conflicting, it is solely the responsibility of the ALJ to resolve any ambiguities and conflicts in the evidence. See Reddick, 157 F.3d at 722; Schweiker, 694 F.2d at 642.

REPORT AND RECOMMENDATION
Page - 9

conclusory, and inadequately supported by clinical findings" or "by the record as a whole." See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983); see also Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. Here, the evaluation forms filled out by Dr. Hwang contain no diagnostic or other clinical notes, and the one documented evaluation performed by him in the record was essentially unremarkable.[4] Tr. 325-28, 357-60, 375-79.

Because the evaluation forms completed by Dr. Hwang contain little in the way of diagnostic or other clinical findings, it was not unreasonable for the ALJ to presume that his findings were based largely on plaintiff's own self-reports. In addition, because the ALJ found plaintiff to be less than fully credible regarding his symptoms and impairments, and plaintiff has not challenged that finding, the ALJ also did not err in rejecting Dr. Hwang's reports in part for this reason. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). Finally, on each of the evaluation forms completed by Dr. Hwang, he attributed plaintiff's mental limitations also to her symptoms of physical pain (Tr. 326, 358, 376), which, as discussed above, the ALJ properly found did not prevent her from performing a modified range of light work.

V. **The ALJ Did Not Err in Finding Plaintiff Capable of Performing Other Jobs Existing in Significant Numbers in the National Economy**

If the claimant cannot perform his or her past relevant work at step four of the disability evaluation process, at step five, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e). There are two ways that the ALJ can to this: "(a) by the testimony of a vocational expert, *or* (b) by reference to the [Commissioner's] Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Tackett, 180 F.3d at 1100-1101 (emphasis in original); see also Osenbrock v. Apfel, 240 F.3d 1157, 1162

---

[4] Plaintiff questions the ALJ's reliance in part on the psychiatric review technique form completed by Dr. Lysak, stating that it too is a check box form. Plaintiff's Opening Brief, p. 30. Dr. Lysak, however, is a non-examining consulting physician, and thus his opinions contained therein necessarily are based on his review of the record and not on his own independent evaluation of plaintiff. Tr. 340-48. This is why non-examining physician opinions may constitute substantial evidence only if they are "consistent with other independent evidence in the record," as is the case here as discussed herein. Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149.

REPORT AND RECOMMENDATION
Page - 10

(9th Cir. 2001). The ALJ's ability to rely on the Grids is limited, however, as noted by the Ninth Circuit in describing their purpose and function:

> In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. . . .
>
> The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work."[5] . . . Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, . . . the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. *See id.*
>
> This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. . . .
>
> The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.

Tackett, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).

If, on the other hand, a claimant has "significant non-exertional impairments," those impairments "may make reliance on the grids inappropriate."[6] Id. at 1101-02; see also Osenbrock, 240 F.3d at 1162 (ALJ cannot rely on Grids where claimant has significant non-exertional impairments); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (Grids inapplicable when they do not completely describe claimant's abilities and limitations). Proper use of the Grids depends in each case upon the nature and extent of the claimant's impairments and limitations:

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment . . . In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded. However, where a claimant suffers solely from a nonexertional impairment . . . the grids do not

---

[5]However, "[I]f a claimant is found able to work the full range of heavy work this is 'generally sufficient for a finding of not disabled.'" Tackett, 180 F.3d at 1101 n.5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00).

[6]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION
Page - 11

>  resolve the disability question . . . other testimony is required. In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. . . . If so, then benefits must be awarded. However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required. In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." . . . In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (internal citations and footnotes omitted).

Plaintiff argues the ALJ erred in applying the Grids to find her not disabled. Plaintiff's Opening Brief, pp. 28, 30. Clearly, however, this is not what the ALJ did. Rather, in accordance with the proper method for working with the Grids outlined above, the ALJ used the Grids as a "framework," along with vocational expert testimony, to determine plaintiff's capability to perform other jobs existing in significant numbers in the national economy. Tr. 26-29. Plaintiff also asserts that if a claimant cannot sustain any employment for at least three consecutive months, the Commissioner must find the claimant disabled, because while the claimant might be able to obtain work, he or she could not sustain it for the requisite period. Plaintiff's Opening Brief, p. 28. Plaintiff though, cites to no legal authority for this proposition, let alone point to any evidence in the record indicating she is unable to sustain employment for longer than three months. Indeed, as discussed above, she cannot make such a showing.

Finally, in her reply brief, plaintiff argues that the hypothetical question posed by the ALJ to the vocational expert did not fairly or adequately describe her limitations. Plaintiff's Reply Brief, p. 5. The hypothetical question the ALJ posed to the vocational expert contained the same limitations as in her assessment of plaintiff's residual functional capacity. Tr. 452-53, 455-56. In response to that question, the vocational expert testified that an individual with that residual functional capacity could perform other jobs existing in the national economy. Tr. 454-58. Based on the testimony of the vocational expert, the ALJ found that these jobs existed in significant numbers in the national economy, and that therefore plaintiff was not disabled at step five of the disability evaluation process. Tr. 26-29.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the

medical evidence to qualify as substantial evidence. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." <u>Embrey</u>, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

Once more, because plaintiff did not raise this issue until she included it in her reply brief, the undersigned finds it has been improperly brought before this court. In any event, as discussed above, the ALJ did not err in assessing plaintiff's residual functional capacity. As previously noted, the hypothetical question the ALJ posed to the vocational expert contained essentially the same limitations as those in the residual functional capacity assessment. Accordingly, the ALJ properly relied on the vocational expert's testimony to find plaintiff capable of performing other work existing in significant numbers in the national economy, and therefore did not err in finding her not disabled.

VI.   <u>Additional Evidence</u>

Plaintiff submitted for the court's review additional evidence that was provided to and considered by the Appeals Council, but not included in the record. <u>See</u> attachments to Plaintiff's Opening Brief (Dkt. #14-2 ("Attachment 1") and #14-3 ("Attachment 2")); Tr. 7. That evidence indicates that subsequent to the decisions issued by the ALJ and Appeals Council in this matter, plaintiff was approved for SSI benefits based on a new application that she filed in February 2005. <u>See</u> Attachment 1, pp. 1-10. It also includes additional medical reports, each of which is dated subsequent to the ALJ's decision. <u>See</u> Attachment 1 and Attachment 2. Plaintiff argues this evidence verifies that she has severe mental and physical limitations and restrictions. Plaintiff's Opening Brief, p. 24.

The court, however, first must address whether or not it has the authority to review such evidence. In light of the Ninth Circuit Court of Appeal's most recent decision on this issue, is not clear that it does without a showing of "good cause" by plaintiff. <u>See</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 461-63 (9th Cir. 2001) (stating that issue of whether "good cause" is required to review new evidence submitted for the first time to the Appeals Council has not yet been decided).

In <u>Mayes</u>, the Ninth Circuit applied the standard set forth in 42 U.S.C. § 405(g) – which is used to

determine whether to remand in light of new evidence submitted for the first time to the federal court – to determine whether remand was appropriate in light of additional evidence submitted for the first time to the Appeals Council. Id. at 461-62. Under this standard, to justify remand, the claimant must show the additional evidence is both "new" and "material" to determining disability, and the claimant "had good cause for having failed to produce that evidence earlier." Id. at 462.

To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" Id. (citation omitted). The claimant also must demonstrate a "reasonable possibility" the new evidence "would have changed the outcome of the administrative hearing." Id. (citation omitted). To demonstrate "good cause," the claimant must show the new evidence "was unavailable earlier." Id. at 463. The good cause requirement will not be met by "merely obtaining a more favorable report once his or her claim has been denied." Id. Here, the court need not determine whether plaintiff is required to show good cause for not submitting the additional evidence earlier,[7] as she has not shown there is a reasonable possibility such evidence would have changed the outcome of her hearing. Id. at 462; 20 C.FR. 404.970(b).[8]

The additional evidence contains a record of a lumbar spine MRI having been performed in early March 2003, finding "[n]o evidence of lumbar disc protrusion," and only moderate degenerative disc and facet changes. See Attachment 1, p. 12. Further electrodiagnostic studies conducted in early May 2004, were "[e]ssentially normal," revealing "no evidence" of neuropathy or "acute or active" radiculopathy, a "[n]ormal right hip," "[m]ild osteoarthritis of the right knee joint," and the presence of arthropathy and "mild left and borderline right foraminal narrowing in the lumbar spine. See Id., pp. 20, 23-25. Plaintiff also has included one page of a state physical evaluation form completed by Dr. Louis C. Enkema in early April 2004, indicating plaintiff was capable of performing sedentary work, with a fifty percent chance of "improving to do light duty." See Attachment 2, p. 10. A letter from Dr. Enkema, dated May 5, 2004, states that she feels a move from a second story apartment to one on the first floor was justified for plaintiff

---

[7] If a showing of good cause is in fact required, the court notes that plaintiff most likely would be unable to meet it. Plaintiff has provided no reason why he could not have obtained, and then submitted to the ALJ, the medical reports attached to her opening brief prior to the date the ALJ issued his decision.

[8] The Commissioner's regulations also require that additional evidence submitted for the first time to the Appeals Council be "new and material." 20 C.F.R. § 404.970(b). The Commissioner does not define "new" and "material." However, there is no reason to believe the Ninth Circuit would apply a different meaning to those terms in determining whether remand under 42 U.S.C. § 405(g) is appropriate, than the Commissioner would in determining whether to grant review under 20 C.F.R. § 404.970(b).

REPORT AND RECOMMENDATION
Page - 14

1  in the hope of forestalling surgery and preventing incapacitation. See Id., p. 14.

2  In light of the weight of the medical evidence in the record concerning plaintiff's pain and physical impairments discussed above that was before the ALJ, the additional records submitted by plaintiff are not sufficient to create a reasonable probability that the ALJ would have decided this matter any differently. Further, none of these records expressly relate to the period prior to the ALJ's decision. Those additional records submitted by plaintiff regarding her mental impairments are equally unpersuasive.

A state psychological/psychiatric evaluation form completed by Bruce A. Eather, Ph.D. in late July 2003, indicated plaintiff's mental impairments resulted in at most only mild to moderate functional limitations. See Attachment 1, p. 17. Another state psychological/psychiatric evaluation form completed by Dr. Nelson J. Williams, Jr., in early April 2004, indicated that plaintiff had marked limitations in all of her major mental functional areas. See Attachment 2, p. 4. This form, however, contains little in the way of diagnostic or other clinical notes, and is accompanied by a "check-box" form that is similarly devoid of any such supporting documentation. See Id., pp. 2-9. Thus, as with Dr. Hwang's reports discussed above, it would not be improper for the ALJ to give little, if any, weight to these forms.

In addition, although plaintiff may have been granted SSI benefits based on the new application she filed in February 2005, the additional records submitted by plaintiff do not at all indicate why she has been granted such benefits. Nor is there any indication that in approving the new application, the Commissioner found plaintiff would be entitled to SSI benefits at any time prior to the date that application was approved. In any event, the only matter that is currently before this court is plaintiff's January 5, 2000 application and the ALJ's decision denying that application. The court thus declines to make any determination regarding the effect plaintiff's February 2005 application has on this matter.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ properly determined plaintiff was not disabled. Accordingly, the ALJ's decision is affirmed.

DATED this 22nd day of November, 2005.

Karen L. Strombom
United States Magistrate Judge